UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EDGAR MARIN,

                  Plaintiff,

        v.

THE CITY OF NEW YORK,
WALTER LYNCH, et al.,

                Defendants.

OPINION AND ORDER
04-CV-3194 (NG) (JMA)

**GERSHON, United States District Judge:**

Plaintiff Edgar Marin brings this suit against the City of New York and New York City Police Department Detective Walter Lynch, seeking damages for the violation of his civil rights under 42 U.S.C. § 1983 ("Section 1983") and New York law. Marin claims his Fourth Amendment rights were violated on October 15, 2003, when Detective Lynch arrested him for forgery and grand larceny. The City and Detective Lynch now move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b). Because the evidence, viewed in the light most favorable to Marin, is insufficient for a reasonable jury to find for him on his false arrest and excessive use of force claims, defendants' motion for summary judgment as to those claims is granted. All of Marin's federal claims having been dismissed, I decline to exercise supplemental jurisdiction over Marin's remaining state law claims and dismiss them without prejudice.

**I.    FACTS**

The following facts are undisputed unless otherwise noted.

During 1998 and 1999, Marin worked as a customer service agent at John F. Kennedy International Airport. One evening, a flight arrived from South America and Marin was approached

by a Brazilian woman who identified herself as Daniella Cuhna. Ms. Cuhna and Marin became friends, and she introduced him to her father, Pedro Cuhna. In the following years, Pedro Cuhna and Marin stayed in touch via telephone. They discussed doing business together in Brazil and occasionally had lunch when Mr. Cuhna and his wife visited New York.

During a telephone conversation in June or July 2003, Pedro Cuhna introduced Marin to a woman who identified herself as Thereza Pereira. Pereira told Marin she had worked in New York for many years, but needed help transferring money from her Merrill Lynch Cash Management Account, which was based in the United States, to Brazil. Marin, who by now was working as an insurance agent at New York Life, agreed to help. Pereira and Marin discussed the transaction in several other calls, but Marin never signed a written agreement with Pereira, asked her for her address, or discovered how she knew Pedro Cuhna. Marin Depo. 153–56.

Unknown to Marin, the real Thereza Pereira was diagnosed with Alzheimer's disease in the year 2000, and was incapacitated by 2003.[1] On January 27, 2003, Pereira's nephew, Mario Fihlo, was appointed her provisional administrator by the Court of Orphans and Successions in Rio de Janiero. *See* Affidavits of Mario Fihlo and Lucia Maria de Carvalho Pereira. Fihlo was appointed Pereira's permanent administrator on August 13, 2003. According to Filho, Pereira had no legal authority under Brazilian law to grant anyone a Power of Attorney after January 27, 2003.

Also unknown to Marin was that the checks for Pereira's Merrill Lynch account were stolen in March 2003.[2] After the theft, Merrill Lynch assigned Pereira's account a new number, and cancelled the checks and debit cards associated with it. In addition, Filho requested that no

---

[1] Marin disputes whether Pereira was ill. *See* section II, *infra*.

[2] Marin disputes that the checks were stolen. *See* section II, *infra*.

transactions on the account be allowed without his express permission.

In July 2003, Marin received a document purporting to be a Power of Attorney from the woman he believed to be Thereza Pereira, which authorized him, *inter alia*, to transfer funds from Pereira's Merrill Lynch account. Marin took the document to Merrill Lynch's offices. Marin spoke with Sal Campion, who reviewed the Power of Attorney, then told Marin it was "bogus" and he was "doing something illegal." Marin Depo. 150. Incensed at being denied access to the account, Marin challenged Campion to call the police and have him arrested, which Campion declined to do. Marin also filed a complaint against Merrill Lynch with the National Association of Securities Dealers.[3] Marin returned to Merrill Lynch several times thereafter, and was eventually denied access to their offices.

Unable to access the account, Marin called the woman he claims is Thereza Pereira, who told him she would send him some checks. Some days later, Marin received three checks, for $100,000, $60,000, and $10,000. The $100,000 and $60,000 checks were drawn against Thereza Pereira's cancelled Merrill Lynch account and made out to Marin.[4] On August 5, 2003, Marin deposited the $100,000 check into his Smith Barney money market account. On August 8, Marin deposited the $60,000 check into his Fleet Bank checking account. Before depositing the check, Marin's Fleet Bank account had a balance of approximately $1,100.

On August 13, 2003, Marin withdrew $25,000 cash from his Fleet account. Pedro Cuhna visited Marin's office, and Marin gave him the money in an envelope. Several days later, Marin

---

[3] The complaint alleged Merrill Lynch was trading on its clients' behalf without authorization. Nothing came of it. Marin Depo. 149–50.

[4] The $10,000 check does not appear in the record.

attempted to withdraw an additional $25,000 and was informed that his account had been frozen because the $60,000 check was returned marked lost or stolen. The branch manager informed Marin he would face criminal prosecution if he did not repay the $25,000. Fleet made several attempts to recover the $24,142 overdraft. Marin, broke, never repaid the money. *Id*. at 245.

**A.      Criminal Investigation**

On September 8, 2003, Noel Barreto, an investigator at Fleet Bank's corporate security services department, contacted Walter Lynch, a detective in the Midtown North Detective Squad. Barreto informed Lynch that Marin "had overdrawn his account under suspicious circumstances and refused to return the funds that he had withdrawn." Lynch Aff. ¶ 4. Specifically, Barreto told Lynch that Marin deposited a $60,000 check into his account drawn against Thereza Pereira's Merrill Lynch cash management account; that the check was returned marked "Lost/Stolen;" that Marin withdrew $25,000 from the account; that Marin was informed the $60,000 check was fraudulent; and that Marin refused to repay the overdrawn funds. Barreto also told Lynch that Marin returned to the bank with a Power of Attorney for the Merrill Lynch account and that the bank informed him it was fraudulent.

After their conversation, Barreto faxed Detective Lynch a formal request for assistance and documents in support of the request. Among them was a "Suspicious Activity Report" prepared at Fleet Bank, which stated:

> During the course of our investigation, we conferred with [illegible] Merrill Lynch and were advised that Ms. Pereira (the maker) is a resident of Rio de Janeiro and did not issue any check as she is afflicted with mental illness. We also confirmed that Ms. Pereira does not know Edgar Marin. An affidavit is pending from Ms. Pereira.

Def.'s Ex. N.

On October 11, 2003, Detective Lynch spoke with John Conenna, an investigator with Merrill Lynch's security department. Conenna informed Detective Lynch that he "had been in touch with Pereira's family in Brazil," that "Mr. Marin was not known to Ms. Pereira's family" and that "Mr. Marin [had not] been given any authority over Ms. Pereira's Merrill Lynch account." Lynch Aff. ¶¶ 17-20. Conenna also told Detective Lynch that Pereira was incapacitated.

**B.  Arrest**

Between 6:30 and 7:00 a.m. on October 15, 2003, police officers arrived at Marin's Brooklyn home and asked him to accompany them to the Midtown North precinct. At the precinct, Detective Lynch identified Marin and arrested him without a warrant. After taking his personal effects, Detective Lynch placed Marin in a holding cell. Sometime thereafter, Marin was removed to be fingerprinted and photographed. Around 11:00 p.m. that same day, Detective Lynch questioned Marin after giving him his *Miranda* warnings. The interview concluded when Marin told Lynch, "Make sure you got me while I'm in your custody. When I get . . . out I'm coming after you, your children's piggy banks," meaning he intended to sue. Marin Depo. 214.

At about 2:30 p.m. the next day, Marin was taken to Central Booking and charged with one count of Grand Larceny in the Second Degree (N.Y. Penal Law § 155.40(1)) and two counts of Forgery in the Second Degree (N.Y. Penal Law § 170.10(1)). Bail was set at $5,000. The next day, a friend of Marin's posted bail, and he was released. On April 8, 2004, the charges against Marin were dismissed pursuant to the speedy trial provisions of the New York Criminal Procedure Law.

Marin testified he was not physically harmed as a result of his arrest and processing. Marin Depo. 226–28. He also testified he was never assaulted, *id.* at 265, and he has not introduced any evidence that anyone physically threatened him. When asked to describe the nature of his injuries,

Marin testified he panics when he sees the police. (Marin has nevertheless spoken with an internal affairs officer, spoken with Detective Lynch, and called the police to complain about noisy neighbors since his arrest.) He also complains his personal and financial life fell apart after the arrest.

## II. DISCUSSION

Defendants move for summary judgment on Marin's federal claims on the grounds that there was probable cause for Marin's arrest, Detective Lynch is entitled to qualified immunity, and Marin cannot establish a Section 1983 municipal liability claim. Additionally, they ask the court to decline to exercise supplemental jurisdiction over Marin's state law claims.

### A. Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). An issue of fact is "genuine" if "the evidence is such that a jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *id.*).

Initially, the moving party has the burden of demonstrating that no genuine issue of material fact exists. *See, e.g., Vermont Teddy Bear Co. v. 1-800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir. 2004). Thereafter, the non-moving party must raise a genuine issue of material fact to survive the motion. *See id.* In doing so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]here is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby*, 477 U.S. at 249.

At summary judgment, "the district court is . . . required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (1996) (citing *Liberty Lobby*, 477 U.S. at 255).

**B.     Section 1983 claims**

The complaint asserts two federal claims under Section 1983, which provides a remedy to plaintiffs deprived of a federal right by persons acting under color of state law.

**1. False Arrest and Imprisonment**

Marin's principal claim is that he was arrested and detained without probable cause. "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures . . . is substantially the same as a claim for false arrest under New York law." *Weyant,* 101 F.3d at 852. "To prove the elements of false arrest under New York law, [a] plaintiff must show: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). "The existence of probable cause to arrest constitutes . . . a complete defense to an action for false arrest whether that action is brought under state law or under § 1983." *Weyant*, 101 F.3d at 852 (quoting *Bernard*, 25 F.3d at 102).

"Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an

offense has been committed by the person to be arrested." *Boyd v. City of New York*, 336 F.3d 72, 75–76 (2d Cir. 2003) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). The standard "is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). "To determine whether an officer had probable cause to arrest an individual, [a court must] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Id.* at 371 (quoting *Ornelas v. United States,* 517 U.S. 690, 696 (1996)). While the standard is "not readily, or even usefully, reduced to a neat set of legal rules," *Gates,* 462 U.S. at 232, certain frequently recurring fact patterns are generally recognized as a sufficient basis for probable cause. For instance, "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995), *cert. denied*, 517 U.S. 1189 (1996). A court may determine as a matter of law whether probable cause to arrest existed if the pertinent events and knowledge of the officers are not disputed. *Weyant*, 101 F.3d at 852. Under New York law, an arrest made without a warrant raises a rebuttable presumption that such arrest was unlawful, and the defendant has the burden of raising and proving the affirmative defense of probable cause. *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003).

Here, the parties agree the Police Department intentionally detained Marin without his consent; thus, the crucial issue for his false arrest and imprisonment claim is whether there was

probable cause to arrest him. The undisputed record establishes that, at the time of the arrest, Detective Lynch possessed evidence from three sources from which he reasonably inferred Marin committed a crime. First, Noel Barreto, an investigator at Fleet Bank, informed Detective Lynch that Marin was involved in a "check scheme." Barreto's request for assistance was supported by a documentary history of the account. In addition, Barreto told Lynch he had confirmed the Pereira family did not know Marin and that Marin had presented a fraudulent Power of Attorney to Fleet Bank. Second, John Conenna, an investigator at Merrill Lynch, confirmed many of the details that Barreto supplied. Finally, Detective Lynch was aware of the history of transactions on Marin's Fleet account. In particular, Lynch was aware that:

(1) the account had a balance of approximately $1,100 at the beginning of August 2003;

(2) Marin deposited a check for $60,000 into the account on August 8;

(3) Marin withdrew $25,000 in cash on August 13;

(4) the $60,000 check was reported lost or stolen and Marin's account was overdrafted; and

(5) Marin did not repay the overdraft or make other arrangements with the bank.

Based on the information provided by Barreto and Conenna and the history of Marin's Fleet account, Lynch's inference that Marin had committed a crime was reasonable.

Marin nonetheless disputes whether there was probable cause for his arrest, arguing that Lynch was not entitled to rely on information provided by Barreto and Conenna, especially their determination that the Power of Attorney was fraudulent. This misconceives the nature of probable cause. In general, a police officer may rely on information from a victim of, or witness to, a crime, provided the circumstances do not call into question the person's veracity or the basis for his

knowledge. *See* S*inger*, 63 F.3d at 118. Barreto had no personal interest in seeing Marin arrested, did not stand to gain anything by falsely reporting he committed a crime, identified himself to Detective Lynch, and provided extensive documentary evidence to corroborate his criminal complaint. The same is true of John Conenna.[5] Accordingly, Detective Lynch's reliance on information provided by Barreto and Conenna was not improper.[6]

Marin also appears to argue that defendants cannot establish probable cause on this motion because Barreto and Conenna's statements to Detective Lynch contained inadmissible hearsay

---

[5] Marin claims Detective Lynch should not have relied on information from Conenna because Merrill Lynch engineered a wide-ranging conspiracy against him. *See* Marin Aff. ¶ 9. Despite the availability of full discovery, Marin has produced no evidence of such a conspiracy. In any event, and assuming Marin told Lynch about the conspiracy, Lynch could have reasonably concluded, based on the totality of the evidence, that the conspiracy was a product of Marin's imagination. *See, e.g., United States v. Gagnon*, 373 F.3d 230, 235 (2d Cir. 2004) ("Courts do not isolate each factor of suspicion but instead look to the totality of the circumstances.")

[6] Marin challenges on this motion the truth of two pieces of information upon which Detective Lynch relied. Any factual issue which plaintiff could now raise is immaterial, as the relevant issue is whether Detective Lynch, at the time of the arrest, had probable cause. In any event, Marin fails to show there is a factual issue.

First, Marin contends Pereira was "a normal octogenarian with [the] ability to execute documents and . . . communicate effectively." Pl.'s Rule 56.1 Stmt. ¶ 1. As evidence of this, Marin notes he talked to *someone* who was cogent in the summer of 2003, and later received a Power of Attorney from her. Defendants, in contrast, introduced two affidavits from Pereira's family and a note from Pereira's doctor that indicate she was incapacitated. Marin does not dispute the authenticity of these documents, produced no evidence the woman he talked to was in fact Pereira, and testified he never met Pereira. Marin Depo. 153–56. In light of his failure to rebut the defendants' evidence or introduce evidence the woman he talked to was Pereira, Marin's conclusory allegation that she was well does not raise a genuine issue of material fact.

Second, Marin contends "[n]o check was [ever] reported stolen prior to September 2003 and it was an [afterthought] designed to criminalize plaintiff's conduct and transaction with Ms. Perierra." Pl.'s Rule 56.1 Stmt. ¶ 8. Nevertheless, Marin has produced no evidence to counter the following evidence of theft that the defendants introduced: (1) affidavits from Perierra's family, stating the checks were stolen in March 2003; (2) a memo from Fihlo to Merrill Lynch, dated March 17, 2003, discussing the theft of the checks; (3) a memo from Lucia Pereira to Merrill Lynch Security Fraud Control, dated September 5, 2003, discussing the theft of the checks.

- 10 -

insofar as they reported on conversations with the Pereira family. While hearsay may not be used to support a motion for summary judgment, *Sarno v. Douglas Elliman Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999), a detective may rely on hearsay in determining whether there is probable cause to arrest a suspect, *see, e.g., United States v. Parcel of Property*, 337 F.3d 225, 236 (2d Cir. 2003) ("there is clear authority in our circuit allowing the use of hearsay to establish probable cause"). Moreover, because the statements are offered to show the information Detective Lynch had when he arrested Marin, they are not inadmissable hearsay on this motion. *See Golden v. City of New York,* 418 F. Supp. 2d 226, 233 (E.D.N.Y. 2006).

In any event, Detective Lynch is entitled to qualified immunity. Under that doctrine, "government officials performing discretionary functions . . . generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Confronted with a significant, unexplained overdraft and statements, supported by documentary evidence, from officials of two banks that Marin attempted check fraud, a reasonable police officer would have believed there was probable cause to arrest Marin. *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (stating that, in the context of a qualified immunity defense, a defending officer need only show "arguable" probable cause). Accordingly, summary judgment is granted in favor of defendants on plaintiff's false arrest and imprisonment claim.

**2. Excessive Use of Force**

Marin's second Section 1983 claim is for excessive use of force. "To establish a claim of excessive force, 'a plaintiff must show that the force used by the officer was, in light of the facts and

circumstances confronting him, 'objectively unreasonable' under Fourth Amendment standards.'" *Davis v. Rodriguez*, 364 F.3d 424, 431 (2d Cir. 2004) (quoting *Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir. 1990)). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Saucier v. Katz*, 533 U.S. 194, 209 (2001) (quoting *Graham v. Connor*, 490 U.S. 386, 386). Rather, the court must judge the "'reasonableness' of a particular use of force from the perspective of a reasonable officer on the scene," giving "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Marin testified: (1) no police officer ever touched him, except to handcuff him when he was fingerprinted and transported to Central Booking, Marin Depo. 227; (2) he was not physically injured either time he was handcuffed, *id.* at 216, 219; and (3) "I was never assaulted," *id.* at 265. Accordingly, summary judgment in favor of the defendants is granted as to Marin's claim for excessive force.

**3. Municipal Liability**

For a municipality to be held liable under Section 1983 and the principles of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), an action contrary to the Constitution and laws of the United States must be performed by one of its officers. Because I have found there was probable cause for Marin's arrest, and no officer used excessive force, this condition is not met. Accordingly, summary judgment is granted in favor of defendants as to Marin's Section 1983 claims against the City of New York.

### C. State Claims

Since claims for false arrest and imprisonment are no different under New York law than under Section 1983, summary judgment will be granted in favor of defendants on plaintiff's state law claim for false arrest and imprisonment. *See Boyd*, 336 F.3d at 75.

However, I decline to exercise supplemental jurisdiction over plaintiff's state law claims for violating Article 1, Section 12 of the New York Constitution, assault and battery, intentional infliction of emotional distress, negligence, malicious prosecution, and abuse of process. *See* 28 U.S.C. § 1367(c); *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 103 (2d Cir. 1998) (stating that "when all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice").

### III. CONCLUSION

For the reasons given above, defendants' motion for summary judgment is granted as to all of plaintiff's Section 1983 claims and plaintiff's state law claim for false arrest and imprisonment. As I decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims, they are dismissed without prejudice.

SO ORDERED.

_____/s/_____
Nina Gershon, U.S.D.J.

Dated: August 1, 2006
      Brooklyn, New York